**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| CROTHERSVILLE LIGHTHOUSE | ) | |
| TABERNACLE CHURCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-cv-00153-TWP-DML |
| | ) | |
| CHURCH MUTUAL INSURANCE COMPANY, | ) | |
| S.I., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendant

Church Mutual Insurance Company, S.I. ("Church Mutual"). (Filing No. 28.) Plaintiff

Crothersville Lighthouse Tabernacle Church, Inc. ("Lighthouse Tabernacle") initiated this action

alleging that Church Mutual breached its insurance contract with Lighthouse Tabernacle by failing

to pay out the required amount following a fire. Church Mutual seeks summary judgment on

Lighthouse Tabernacle's breach of contract claim, bad faith claim and request for punitive

damages. For the following reasons, the Court **grants** Church Mutual's Motion.

## I. BACKGROUND

As required by Federal Rule of Civil Procedure 56, the facts are cited in the light most

favorable to Lighthouse Tabernacle. *See Cervantes v. Ardagh Grp*., 914 F.3d 560, 564 (7th Cir.

2019). However, pursuant S.D. Ind. Local R. 56-1(b), Lighthouse Tabernacle's response should

have included a section labeled "Statement of Material Facts in Dispute" that identified the

potentially determinative facts and factual disputes that Lighthouse Tabernacle contends

demonstrate a dispute of fact precluding summary judgment. Lighthouse Tabernacle did not

include this section, so to the claim that it fails to challenge any factual assertions made by Church

Mutual, the Court accepts those facts as admitted without controversy. *See Hinterberger v. City of Indianapolis*, 966 F.3d 523, 527-29 (7th Cir. 2020); *see also* S.D. Ind. L.R. 56-1(f). While this does not alter the standard for assessing a Rule 56 motion, it does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

Located in Crothersville, Indiana, Lighthouse Tabernacle is a midsize, Apostolic Pentecostal church that first constructed its primary church building (the "Church Building") in 1975. (Filing No. 1-2 at ¶¶ 1, 5-6.) Lighthouse Tabernacle is led by Paster Jerry Miles ("Pastor Miles") and serves a congregation of approximately 200 members. *Id.* at ¶¶ 7-8. The Church Building was originally built by members of the congregation and underwent remodeling in 2012. *Id.* at ¶ 12. One of the distinguishing features of the Church Building were several arched glue laminated beams, known as glue lam or glulam beams, in the sanctuary. *Id.* at ¶ 11.

In the early hours of June 3, 2018, the Church Building caught fire. *Id.* at ¶ 10. The fire damaged the sanctuary, offices, classrooms, and baptismal area. (Filing No. 30-1 at ¶ 5.) On the date of the fire, the Church Building was insured under a policy issued by Church Mutual under policy number 0085870-21-038185 (the "Policy"). (Filing No. 29 at 4.) The Policy included property coverage with a limit of $2,346,000.00 for Blanket Buildings & Personal Property Owned by Lighthouse Tabernacle with a property deductible of $2,500.00 for each occurrence.

On the date of the fire, Pastor Miles contacted Church Mutual to notify them of the fire and to begin investigating and processing Lighthouse Tabernacle's claim. (Filing No. 1-2 at ¶ 20.) The following day, Church Mutual sent Lighthouse Tabernacle two letters acknowledging receipt of the claim and informing Lighthouse Tabernacle that it was beginning its investigation. (Filing No. 29 at 8.) The letters listed George Ben Hodges ("Hodges") as the assigned Property Field Adjuster

and York Specialized Loss Adjusting Division ("YSLAD") as the organization investigating the claim. *Id.* Kelly Ross ("Ross") of YSLAD was assigned to investigate the claim. *Id.* On the same day, Church Mutual issued a $25,000 advance payment to Lighthouse Tabernacle. *Id.*

On July 3, 2018, Hodges sent Lighthouse Tabernacle a letter notifying it that Church Mutual needed an additional 30 days to complete its investigation. (Filing No. 30-1 at ¶ 8.) A few weeks later, Chris Tremaine of Tremaine Enterprises, Inc. ("Tremaine") sent a letter to Church Mutual notifying it that Lighthouse Tabernacle had retained Tremaine as its public adjuster. *Id.* at ¶ 9. In the letter, Tremaine requested specific documents from Church Mutual and expressed that Lighthouse Tabernacle "intends to exercise the replacement cost options as it relates to this claim." *Id.* Three days later, on July 30, 2018, Church Mutual sent another letter to Lighthouse Tabernacle notifying them that they needed another additional 30 days to complete the investigation. *Id.* at ¶ 10.

During June 2018, Church Mutual retained Simon Katz ("Katz") of Watchful Eye Companies, LLC to work as a building consultant. *Id.* at ¶ 11. Katz completed an original estimate in June 2018 that was later revised in August 2018. *Id.* According to Katz's August 2018 estimate, the estimated replacement cost to rebuild the Church Building was $1,384,241.32. *Id.* at ¶ 12. In response, Tremaine provided an estimate on September 20, 2018, which estimated the cost of rebuilding the Church Building at $2,247,999.99. *Id.* at ¶ 17. As part of his estimate, Tremaine contacted Glue Lam Erectors, Inc. ("GLE") and obtained a proposed budget for installing the glue lam beams and wood decking. *Id.* at ¶ 18. GLE proposed a budget of $370,303.00 for reconstructing the sanctuary ceiling. (Filing No. 30-2 at ¶ 10.) The proposed budget from GLE, however, also stated, "Please understand we will need an Architect and Structural Engineer to complete Design Documents before we can offer a firm price." *Id.*

On October 11, 2018, after working with Tremaine and Lighthouse Tabernacle, Ross revised Katz's August 2018 estimate for the Church Building to reflect a replacement cost of $1,557,266.26 and an actual case value of $1,385,162.98. *Id.* at ¶ 11. The following day, Church Mutual sent Lighthouse Tabernacle, via Tremaine, an advance payment in the amount of $125,000.00. (Filing No. 30-1 at ¶ 20.) At the end of the month, on October 29, 2018, Church Mutual sent another letter to Tremaine notifying it that Church Mutual needed an additional 15 days to complete its investigation. *Id.* at ¶ 21. On that same day, Church Mutual also sent Lighthouse Tabernacle another letter that included the actual cash value of Lighthouse Tabernacle's business personal property in the amount of $111,630.44. *Id.* at ¶ 22. The letter sent with the payment stated that the replacement cost value of Lighthouse Tabernacle's business personal property was $174,423.81 less recoverable withholding of $60,293.37. *Id.* The letter also stated the following:

> Your policy provides replacement cost coverage. This payment is based on the actual cash value less your deductible. To recover the withholding, repairs and replacement should be completed within 180 days. If you are unable to complete the repairs and replacement within 180 days, notify me. Your receipts will be used to determine the amount of withholding that is recoverable. The full amount of recoverable withholding outlined above may not be available to you if your total costs are less than the estimated replacement value loss.

*Id.*

On November 13, 2018, Marie Desotell ("Desotell"), on Tremaine's behalf, sent Hodges and Ross an email with Lighthouse Tabernacle's proof of loss for a replacement cost of $1,731,690.07 and an actual cash value claim of $1,235,162.98 for the Church Building and Lighthouse Tabernacle's business personal property. *Id.* at ¶ 23. Several weeks later, on December 5, 2018, Church Mutual sent Lighthouse Tabernacle a check in the amount of $1,235,162.98 representing the undisputed actual cash value of the cost to repair or replace the Church Building.

*Id.* at ¶ 24. The letter included with the check included the previously referenced paragraph regarding the 180-day time frame for recovering the withholding.  *Id.*

In February 2019, Katz revised his estimate. *Id.* at ¶ 13. The estimate included estimated costs for glue lam beams from Rigidply Rafters Inc. ("Rigidply").  *Id.* at ¶ 15.  Also included in the estimate was the cost for wood decking ceiling and the labor cost for installation of the glue lam beams and wood decking, including staining, and the cost of delivery of the glue lam beams. *Id.* at ¶ 16.  According to the estimate, the cost to rebuild the Church Building was $1,726,963.75. *Id.* at ¶ 14.

In response to Katz's revised estimate, Tremaine raised several issues. *Id.* at ¶ 25. Specifically, he was concerned that the quote obtained from Rigidply was for fabrication of two straight glue lam beams, and not the fabrication, installation, and transportation of four arched glue lam beams and decking.  *Id.*

At the end of July 2019, Church Mutual sent Tremaine a check for $8,791.53 for Lighthouse Tabernacle's business extra expenses.  *Id.* at ¶ 26.  The following month, in response to Tremaine's concerns over the Rigidply quote, Church Mutual emailed Tremaine that it was going to hire an engineer to inspect the Church Building and provide an estimate.  *Id.* at ¶ 27. Church Mutual hired James McCann ("McCann") of Keeler-Webb Associates as the engineer.  *Id.* at ¶ 28.  On August 6, 2019, Tremaine sent Ross and Hodges an email with Lighthouse Tabernacle's "proof of loss for the subject claim."  *Id.* at ¶ 29.  The email stated that the estimate included GLE's proposal and stated the following:

> Please accept this proof of loss as a demand for payment as the Church can no longer patiently wait for the carrier to make any additional determinations. Please have payment made based upon this proof of loss delivered to our office by Friday, August 16, 2019 or provide a line item denial supporting the carrier's position.

*Id.* The proof of loss attached to the email specifically provided the following: (1) an actual cash value of "TBD"; (2) the whole loss and damage known to date (which included the dwelling and contents) as $2,353,982.90; and (3) the amount claimed by Lighthouse Tabernacle under the Policy as $2,353,982.90. (Filing No. 30-3 at 7.) On August 13, 2019, in response to the proof of loss submitted by Tremaine, Hodges emailed stating that the proof of loss was rejected as being incomplete as "the building and content loss is not broken out, the deductible is not included, and the ACV is not included and the amounts are not agreed to." (Filing No. 30-1 at ¶ 30.)

On October 7, 2019, Church Mutual sent Lighthouse Tabernacle two checks totaling $167,637.66: one in the amount of $166,429.19 representing additional payment of the undisputed actual cash value of damages to the Church Building and another in the amount of $1,208.47 representing the balance of the policy limit for business extra expenses. *Id.* at ¶ 32. The letter sent with the check set out how the payment was determined:

| | |
|---|---|
| The Replacement Cost Value: | $1,911,387.56 |
| Less Recoverable Withholding: | $238,164.95 |
| Minus Prior Payments: | $1,505,584.95 |
| Minus Deductible: | Absorbed |
| Payment Amount: | $167,637.66 |

*Id.* Like other letters including payments, the letter included the paragraph regarding the 180-day time frame for recovering the withholding. *Id.*

Throughout November and December 2019, the parties corresponded back and forth regarding the status of the engineer's report. *Id.* at ¶¶ 33-40. On December 23, 2019, Hodges sent an email to Desotell and Tremaine with the engineer's report ("McCann's Report") attached. *Id.* at ¶ 42. In the same email, Hodges stated that he had asked Ross to revise the estimate based on the engineer's findings. *Id.* Lighthouse Tabernacle and Tremaine responded by raising issues with McCann's Report. *Id.* at ¶ 43. Specifically, the complaints included concerns over not

acknowledging GLE's proposed budget, not relying on a bid or estimate for a glue lam vendor, and concerns over McCann's and Katz's qualifications. *Id.*

On March 16, 2020, Tremaine sent Hodges and Ross a letter on Lighthouse Tabernacle's behalf requesting an appraisal to resolve the dispute regarding the amount of the loss. *Id.* at ¶ 44. On March 24, 2020, Church Mutual sent Lighthouse Tabernacle a check in the amount of $20,207.00 which represented the difference between the actual cash value of the damage to the Church Building as estimated by McCann less the amount that had been previously paid. *Id.* at ¶ 45. The following week, in response to Tremaine's email, Church Mutual notified Lighthouse Tabernacle of the name of its appraiser to assist with the dispute of the amount of loss. *Id.* at ¶ 46.

On June 3, 2020, Lighthouse Tabernacle filed this lawsuit in state court alleging breach of contract, bad faith, and requesting actual and punitive damages from Church Mutual. (Filing No. 1-2 at 4.) The matter was later removed to this federal court. (Filing No. 1.)

## II.    SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). The moving party bears the burden of showing the absence of genuine issues of material fact.

*Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018).  If the moving party carries its burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial.  *Anderson*, 477 U.S. at 250.

"However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).  Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

## III.   DISCUSSION

Lighthouse Tabernacle asserts in its Complaint that Church Mutual breached the Policy, did so in bad faith, and that Lighthouse Tabernacle is entitled to both actual and punitive damages. (Filing No. 1-2.)  Church Mutual moves for summary judgment on all claims, maintaining that

each of Lighthouse Tabernacle's claims fail as a matter of law. (Filing No. 28.) The Court will address each claim in turn.

### A.        Breach of Contract Claim

Church Mutual first argues that it has provided all required benefits under the Policy and, at the same time, did not breach any provision of the Policy.  (Filing No. 29 at 20.)  Under Indiana law, an insurance policy is subject to the same rules of interpretation and construction as other contracts. *Cotton v. Auto-Owners Ins. Co.*, 937 N.E.2d 414, 416 (Ind. Ct. App. 2010). When interpreting an insurance policy, "we give plain and ordinary meaning to the language that is clear and unambiguous." *United Farm Family Mut. Ins. Co. v. Matheny*, 114 N.E.3d 880, 885 (Ind. Ct. App. 2018), *trans. denied*, 124 N.E.3d 40 (Ind. 2019). The contract language is unambiguous if "reasonable persons could not honestly differ as to its meaning." *Id.* To that end, the Court looks to see "if policy language is susceptible to more than one interpretation." *Id.*

Under Church Mutual's interpretation of the Policy, Lighthouse Tabernacle is not entitled to replacement cost benefits. The Policy states that Church Mutual "will not pay on a Replacement Costs basis . . . (1) until the lost or damaged property is actually repaired or replaced; and (2) unless the repairs are made as soon as reasonably possible under the loss or damage." (Filing No. 30-1.) Church Mutual argues that prior to the initiation of this litigation, it had paid Lighthouse Tabernacle the "Actual Cash Value" of the cost to repair or replace the Church Building in the amount of $1,571,799.17. (Filing No. 29 at 20-21.) Church Mutual further contends that Lighthouse Tabernacle has not notified it of repairs either being started or completed. (Filing No. 30-1 at ¶ 50.) Because Lighthouse Tabernacle has not repaired or rebuilt the Church Building "as soon as reasonably possible after the loss or damage," based on the terms of the Policy, Lighthouse

9

Tabernacle "is not entitled to recover the Replacement Cost benefits under the Policy." (Filing No. 29 at 21.)

Church Mutual also argues that Lighthouse Tabernacle is not entitled to additional actual cash value benefits. *Id.* Under the Policy, Lighthouse Tabernacle is required to send Church Mutual "a signed, sworn proof of loss containing the information we request to investigate the claim . . . within 60 days after our request." (Filing No. 30-1.) Church Mutual received two sworn proofs of loss for damage to the Church Building. (Filing No. 29 at 21.) The first was received on November 13, 2018. *Id.* In response, Church Mutual sent Lighthouse Tabernacle a check for $1,235,162.98 on December 5, 2018, which reflected the "undisputed Actual Cash Value of the cost to repair or replace the Church Building as reflected in the November 13, 2018 proof of loss." *Id.* The second proof of loss was dated August 5, 2019 and contained a "Replacement Cost Value" but no "Actual Cost Value." *Id.* Because of this omission, Church Mutual rejected the second proof of loss on August 13, 2019. *Id.* Church Mutual argues that as it has not received any other sworn proof of loss, Lighthouse Tabernacle has not established that it is entitled to any additional "Actual Cash Value" benefits under the Policy. *Id.* at 21-22.

Finally, Church Mutual argues that it has not breached any terms of the Policy and Lighthouse Tabernacle has not identified any provision of the Policy that Church Mutual has not complied with. *Id.* at 22. Church Mutual based its determination of the cost to rebuild the Church Building "initially on the estimate of a contractor that was willing [to] rebuild the building for the amount of its estimate and, after [Lighthouse Tabernacle] questioned the estimate, on the estimate of an engineer." *Id.* Church Mutual asserts that the Policy does not require that it use a specific vendor to determine the cost to rebuilding the Church Building, including the ceiling. *Id.* Its estimate from the contractor was based on a bid from a manufacturer of glue lam beams. *Id.* While

Lighthouse Tabernacle argues that the budget proposal from GLE should have been accepted, Church Mutual points out that nothing in the Policy required it to accept GLE's proposal, and the proposal itself recognized the need for consultation with an engineer or an architect before a firm price could be provided. *Id.* at 22-23. Pursuant to the Policy, it has made all payments owed to date and, thus, Church Mutual argues that it is entitled to summary judgment.

In response, Lighthouse Tabernacle makes three arguments. The first questions the credibility of Ross' and Hodges' supporting affidavits based on Lighthouse Tabernacle's understanding that Steven M. Gunn would be conducting and writing the engineering report, not McCann. (Filing No. 41 at 5.) According to Lighthouse Tabernacle, "[t]he concealed transfer of this obligation to McCann, without ever notifying the same, seriously undermines the credibility of Ross and Hodges and will likely undermine the credibility of McCann also. *Id.* at 5-6.

Lighthouse Tabernacle's second argument is that a factual conflict remains about the cost estimates because Church Mutual has failed to include any testimony from an expert witness. *Id.* at 6. Lighthouse Tabernacle argues that "the dispute between these reports is evidence in the record and requires a jury to determine which is accurate." *Id.*

Finally, Lighthouse Tabernacle contends that Katz worked not as a "building consultant" but rather was an "independent adjuster" under Indiana law. *Id.* at 6-7. Lighthouse Tabernacle argues that Katz was not licensed and that his communications with Hodges and Ross show a conflict of interest. *Id.*

In reply, Church Mutual argues that Lighthouse's argument regarding Dunn versus McCann serving as engineer is both illogical and factually unsupported. (Filing No. 48 at 5.) Church Mutual points out that when Tremaine provided Pastor Miles' contact information, he referenced either Dunn or McCann contacting him. (Filing No. 42-2.) Additionally, when Gunn

responded, he copied McCann on the email.  *Id.*  But even if Lighthouse Tabernacle did not know the identity of the engineer who would be conducting the inspection, Church Mutual asserts, it does not create a genuine issue of material fact relevant to Church Mutual's basis for summary judgment or whether it acted reasonably in retaining an engineer to inspect the property and assist in the determination of the cost to repair or replace the Church Building.  (Filing No. 48 at 5.)

Church Mutual also contends that Lighthouse Tabernacle's claim regarding the need for expert testimony is unnecessary.  *Id.* at 6.  While Church Mutual agrees that a question of fact exists regarding which of the three estimates is accurate, it argues that determination of the accuracy is unnecessary based on the grounds for which Church Mutual seeks summary judgment. *Id.*

Finally, Church Mutual argues that Lighthouse Tabernacle's argument regarding Katz serving as an "independent adjustor" fails because Lighthouse Tabernacle failed to cite to or designate any evidence to support its claim.  *Id.*  Additionally, Church Mutual contends that the evidence it designated shows that Katz "was retained as a building consultant, and [Lighthouse Tabernacle] has failed to cite or designate any evidence to show that Katz took any action other than to inspect the site, obtain relevant information and prepare estimates of the cost to repair or replace the Church Building."  *Id.*

After reviewing the designated evidence in favor of Lighthouse Tabernacle, the Court agrees with Church Mutual.  While failing to directly address the arguments Church Mutual made in support of its motion for summary judgment, Lighthouse Tabernacle has also failed to support most of its arguments and defenses with any citations to designated evidence or analysis of case law. The party opposing summary judgment has an affirmative duty to demonstrate, through specific factual allegations, that there is a genuine issue of material fact.  *Hemsworth*, 476 F.3d at

12

490. *See Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (Summary judgment is "not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence is has that would convince a trier of fact to accept its version of events.").  Except for citing several emails between the parties regarding the engineer's budget estimate, Lighthouse Tabernacle failed to designate or cite to a single piece of evidence that would support its claim that Church Mutual breached the Policy. (Filing No. 41 at 3-5.)

Throughout its response, Lighthouse Tabernacle makes statements disputing the evidence cited by Church Mutual, questioning the credibility of witnesses' testimony, or stating inferences can be drawn from the evidence or testimony.  *Id.* at 5.  The problem, however, is that none of these arguments are either fully explained or supported by designated evidence. Lighthouse Tabernacle cannot meet its burden by merely stating its disagreement with Church Mutual's arguments.  *See Sink*, 900 F. Supp. at 1072 ("The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence.").  And in addition to a lack of supporting factual evidence, Lighthouse Mutual fails to cite to any case law supporting any of its arguments except a few cases discussing the summary judgment standard.  (Filing No. 41 at 2-3.)  It is well-established under Seventh Circuit law that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority are waived (even those arguments that raise constitutional issues)". *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).

The designated evidence fails to show that Church Mutual either breached the Policy or failed to pay Lighthouse Tabernacle the required benefits under the Policy.  Under the explicit terms of the Policy, Church Mutual has paid the "Actual Cash Value" of the cost to repair or replace the Church Building in the amount of $1,571,799.17.  If Lighthouse Tabernacle wanted to seek

the "Replacement Cost," it was required to repair or replace the Church Building and do so "as soon as reasonably possible under the loss or damage." (Filing No. 30-1.) At the summary judgment stage, if Lighthouse Tabernacle believed that it had either received the wrong reimbursement amount or that Church Mutual breached the Policy, it was required to designate evidence showing Church Mutual's alleged breach or a piece of evidence showing that the amount paid out failed to comply with the Policy.  Lighthouse Tabernacle has not done this; thus, summary judgment on the breach of contract claim is **granted**.

### B.    Bad Faith Claim

Church Mutual next argues that it is entitled to summary judgment on Lighthouse Tabernacle's bad faith claim because there is no evidence to support the allegation.  Indiana law recognizes that there is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured.  *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 518 (Ind. 1993).  Breach of contract or poor judgment on the part of the insurance company is insufficient to establish the independent tort of bad faith.  *Id*. at 519-20.  "[T]he element of conscious wrongdoing must also be present."  *Allstate Ins. Co. v. Fields*, 885 N.E.2d 728, 732 (Ind. Ct. App. 2008).  Wrongdoing sufficient to sustain a bad faith claim can be demonstrated with "evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will."  *Id.*

Church Mutual has met its initial burden in its motion for summary judgment by pointing out the lack of evidence supporting Lighthouse Tabernacle's bad faith claim.  Church Mutual did not refuse to pay the necessary cost of construction, based its estimate on a bid from a manufacturer of glue lam beams, timely paid the undisputed portion of the claim, and did not use false information to obtain lower bids.  (Filing No. 29 at 27-31.)  In response, Lighthouse Tabernacle

14

once again cites no evidence or case law to support its claim. It merely states that the communications cited by Church Mutual "could very well be interpreted" as bad faith.

The Court again agrees with Church Mutual. Lighthouse Tabernacle has neither designated nor cited any evidence that would support a finding of bad faith. The designated evidence before this Court does not indicate any conscious wrongdoing on the part of Church Mutual. Summary judgment on Lighthouse Tabernacle's bad faith claim is **granted**.

### C.      **Punitive Damages**

Finally, Church Mutual argues that it is entitled to summary judgment on Lighthouse Tabernacle's claim seeking punitive damages. (Filing No. 29 at 32.) As stated above, all of Lighthouse Tabernacle's claims have been dismissed and it no longer has a basis for seeking punitive damages. Additionally, Lighthouse Tabernacle failed to either argue or address punitive damages in its response brief. For both reasons, summary judgment as to punitive damages is **granted**.

## IV.      **CONCLUSION**

For the reasons discussed above, Defendant Church Mutual Insurance, S.I.'s Motion for Summary Judgment, (Filing No. 28), is **GRANTED**.   Plaintiff Crothersville Lighthouse Tabernacle Church, Inc.'s claims are **dismissed** on summary judgment, the trial and final pretrial conference are hereby **VACATED**, and final judgment will issue under separate order.

**SO ORDERED.**

Date: 12/17/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

15

DISTRIBUTION:

Jason M. Smith
SMITH LAW SERVICES, P.C.
jason.smith@smithlawservices.com

John B. Drummy
KIGHTLINGER & GRAY, LLP (Indianapolis)
jdrummy@k-glaw.com

Todd D. Small
KIGHTLINGER & GRAY, LLP (Indianapolis)
tsmall@k-glaw.com